802 F.2d 459
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 SCOTTS BRANCH MINE, a Joint Venture, and Scotts Branch
Company, a corporation, managing agent for Scotts
Branch Mine, Plaintiffs-Appellants
v.
UNITED MINE WORKERS OF AMERICA, LOCAL NO. 2264, Defendants-Appellees.
 
 Nos. 85-5111, 85-5263.
 United States Court of Appeals, Sixth Circuit.
 Aug. 26, 1986.
 Before ENGEL, MILBURN and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Scotts Branch Company appeals the decision of the United States District Court for the Eastern District of Kentucky denying its motion for an order to show cause why the defendant should not be held in contempt and for a judgment of contempt.
 
 
 2
 The Scotts Branch Company manages the Scotts Branch Mine, a joint venture which is partially owned by Holland Carbon Fuels and is located in Pike County, Kentucky. Holland Carbon Fuels, a Netherlands corporation, had requested that the flag of the Netherlands be flown at the mine on two specified Dutch holidays and on days when Holland Carbon Fuels representatives would be present at the site. In May and early June, 1984, Scotts Branch Mine management informed Union local representatives of their plans to fly the Dutch flag. Following the June 10, 1984, meeting of the Union local, the local president informed mine management that the local had decided by vote to oppose flying the Dutch flag. There were indications that the Union decision was based on the misconception that the Netherlands was a communist country.
 
 
 3
 On June 13, 1984, the day of the visit by Holland Carbon Fuels representatives, mine management new the Dutch flag on a pole separate from and at a level lower than the United States and Commonwealth of Kentucky flags. In response, the workers failed to report for the 4:00 p.m. shift on June 13 and the 12:00 a.m. and 8:00 a.m. shifts on June 14, 1984.
 
 
 4
 On June 25, 1984, Scotts Branch Mine and Scotts Branch Company filed a motion seeking an order requiring the defendants to show why they should not be held in contempt of previous court orders that enjoined them from engaging in any strike or work stoppage over disputes subject to the grievance procedure. Scotts also sought a judgment holding the defendants in contempt. The district court denied the plaintiff's motion.
 
 
 5
 The court noted that it was ruling on Scotts' motions for a preliminary injunction as well as to show cause; however, no motion for a preliminary injunction had been filed. Nevertheless, the court held that even if the dispute were arbitrable, the work stoppage was not enjoinable. It further concluded that the dispute did not involve wages, working conditions, management rights or other subjects of the collective bargaining agreement, but rather the political belief that the Netherlands is a communist country. It decided that compulsory arbitration would have an adverse affect. Thus, although the court did not expressly deny the motion for a showing of cause and for a judgment of contempt, that appears to be the effect of its decision.
 
 
 6
 Finally, the court certified the question whether the dispute should be submitted to arbitration for immediate appeal under 28 U.S.C. Sec. 1292(b). Scotts filed a motion seeking leave to appeal pursuant to 28 U.S.C. Sec. 1292(b) which this court granted on March 29, 1985, and Scotts later filed a notice of appeal.
 
 
 7
 On appeal, Scotts contends that the district court erred both in its findings of fact and conclusions of law in determining that the dispute was not subject to arbitration.
 
 
 8
 All parties to the appeal and the district judge appear to have labored under the mistaken assumption that the issues were framed in the district court by a motion for a preliminary injunction. In a strange display of reciprocal amnesia in the oral argument in this court, counsel for both sides incorrectly related the procedural history of this case and their roles therein.
 
 
 9
 Counsel for the Union denied that a proposed opinion provided by counsel for the Union to the trial judge caused the trial judge to treat incorrectly the issues as arising from a motion for preliminary injunction. The same counsel who argued thus before us, had signed a "Proposed Memorandum and Certification" and according to the joint appendix, page 45, tendered it to Judge Unthank on December 17, 1984. That document is tracked verbatim in most of Judge Unthank's order of January 9, 1985, particularly in its specification that the matter was before him on motion for preliminary injunction, in its specific order denying that motion, and in the language of the proposed certification under 28 U.S.C. Sec. 1292(b). Likewise, at oral argument, counsel for the plaintiff, Edward Hall, insisted that the company had moved for a preliminary injunction in the district court and denied the court's assertion to the contrary observing, however, that he came into the case later. Curiously, Edward Hall who appeared before this court, had signed a reply to the Union's proposed opinion, appearing at page 49 of the transcript, expressly objecting to the proposed order by counsel for the Union and expressly stating and reminding the trial court that no motion for a preliminary injunction had been made.
 
 
 10
 It is particularly difficult for a court at this level to unscramble a procedural circumstance which is so thoroughly confused. Whether a court of appeals has jurisdiction over an appeal from an order denying a motion for preliminary injunction which was never filed in the district court presents a problem of some academic interest but of little value to us or to the progress of this litigation. In any event, another panel of our court has granted leave to appeal under section 1292(b) and we therefore accept the appeal in that posture and decide the question as stated in the application for leave, which we assume to be the question considered by the other panel:
 
 
 11
 3. The question involved in this appeal is whether the dispute or difference which resulted in the work stoppage of June 13 and 14, 1984, took place over an arbitrable issue under the terms and provisions of the National Bituminous Coal Wage Agreement of 1981 and should be submitted to final and binding arbitration under its provisions and procedures.
 
 
 12
 In denying relief Judge Unthank concluded that the work stoppage was caused by the political beliefs of the workers:
 
 
 13
 The court finds that the work stoppage or refusal to work was because of patriotic feeling or sentiment on the part of some members of the local. This feeling arises from a belief that Holland is a communist country. Although everything is discussible by and between reasonable people, excluding those members who do not have such belief but are sympathetic, the court is of the opinion that compulsory arbitration would have an adverse effect.
 
 
 14
 The court finds and concludes that a political belief, although it may have an effect upon one's work habits, is not a part of the collective bargaining agreement. The dispute herein did not concern wages, working conditions or management's right to direct the work force.
 
 
 15
 As so often occurs where the legal principles are well known but their application to the facts at hand is in dispute, the identification of the contested issue may well dispose of the case. It is undisputed that a work stoppage occurred and that this occurred following the display by the company of the Dutch national flag at its company offices. The work stoppage occurred after the company had inquired of the Union whether there would be any objection to this practice. Although informed that there might be, the company nonetheless proceeded to fly the flag and the stoppage occurred. At the time of the stoppage the employees claimed that they struck because "Holland is a communist country." If the issue therefore is a political protest based on the belief that Holland was a communist country, it would appear that the issue was not arbitrable. No arbitrator could resolve the Union's conflict with Holland and there is no indication that the parties agreed to submit that issue to arbitration. See Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Assn., 457 U.S. 702, 721-22 (1982). We must candidly conclude, though, that any finding that the employees struck the plant out of any political objection based upon the misconception that Holland is a communist country is patently incredible and leads strongly to the conclusion that it was but a pretext for the type of disruption of activity which had already been expressly enjoined by the district court.
 
 
 16
 To the extent, however, that the incident developed from the flying of the flag over the company offices, it would appear that the issue was indeed arbitrable. The arbitration clause of the contract at issue here was almost identical to that which was held to compel arbitration in Gateway Coal Company v. United Mine Workers of America, 414 U.S. 368 (1974):
 
 
 17
 Should differences arise between the Mine Workers and an Employer as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the time, an earnest effort shall be made to settle such differences at the earliest practicable time.
 
 
 18
 Natl. Bitum. Coal Wage Agmt. of 1981, art. XXIII, Sec. C. The permanent injunction expressly enjoined work stoppages over issues which were arbitrable, and as in Gateway Coal, the issue at hand, the flying of the flag, appears to be purely local. A grievance could have been filed by the Union to the effect that the company had changed working conditions. On the other hand, the company could argue that its flying of the Dutch flag over headquarters under these circumstances was one of the rights that management expressly reserved under Article IA 5 d of the collective bargaining agreement.
 
 
 19
 In its brief before us, the company does not ask for a vacation and a remand with directions to impose sanctions for a violation of the existing decree, as it originally sought, but instead takes the position that the matter ought to be referred to arbitration. We hold that in such a posture the issue is properly arbitrable or at least should be submitted to an arbitrator in the first instance. The parties clearly appear to have agreed both in the language of the collective bargaining agreement and in the consent decree that such issues should be arbitrated.
 
 
 20
 Accordingly, the judgment of the district court is VACATED and the cause REMANDED with instructions to the court to direct the parties to submit the issue of the flying of the flag to binding arbitration. Since no application for a motion for a preliminary injunction has ever been made or sought, we find that portion of the court's order to be moot and it is for that reason VACATED. The court on remand is empowered to take such other actions under the circumstances as are consistent with the holding herein expressed.